UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL BEASLEY JOHNSON,

 Petitioner,

v.              CASE NO. 8:09-CV-2065-T-27TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

 Respondents.
_____/

## ORDER

  Petitioner is a Florida inmate who was convicted of three counts of first degree murder in 1988 and sentenced to death. His execution is scheduled for November 4, 2009. Before the Court is Petitioner's Application for Stay of Execution Pursuant to *McFarland v. Scott*, 512 U.S. 849 (1994) (Dkt. 1), Respondents' Response in Opposition to Application for Stay of Execution Pursuant to *McFarland v. Scott*, 512 U.S. 849 (1994) (Dkt. 4), Petitioner's Motion to Hold in Abeyance (Dkt. 24) and Respondents' opposition (Dkt. 29).

  After consideration of the parties' submissions, and recognizing that Petitioner is entitled to meaningful federal review of his constitutional claims, the Court concludes that Petitioner's Application for Stay of Execution Pursuant to *McFarland v. Scott*, 512 U.S. 849 (1994) (Dkt. 1) should be **GRANTED**. Likewise, Petitioner's Motion to Hold in Abeyance (Dkt. 24) is **GRANTED**, to enable Petitioner to exhaust his unexhausted claims in state court.

### Discussion

  Petitioner initiated this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254 on October 9, 2009, by filing his Application for Stay of Execution and Motion for Appointment of

Counsel (Dkts. 1, 2). He has since filed a Petition for Writ of Habeas Corpus pursuant to § 2254 raising 17 separate grounds for relief, together with a supporting memorandum of law (Dkts. 21, 22). The petition is 92 pages long and the supporting memorandum is 100 pages long, although twelve of Petitioner's claims are not briefed. Respondents' 267 page response to the petition includes a motion to dismiss and motion for summary judgment (Dkt. 31). The state court record consists of some 14,000 pages, including 147 volumes and 6 boxes of exhibits. The record includes the trial transcripts and at least two post conviction evidentiary hearings.

When Petitioner filed this federal action, his appeal of the Florida Circuit Court's denial of his Florida Rule 3.851 post conviction motion was pending in the Florida Supreme Court. Notwithstanding, on October 7, 2009, the Governor of the State of Florida signed a death warrant scheduling Petitioner's execution for November 4, 2009. As a result, the Florida Supreme Court expedited its proceedings and scheduled oral argument in that appeal for October 28, 2009.

Petitioner's petition is a "mixed" petition, containing exhausted and unexhausted claims, as well as three claims he is pursuing in a recently filed Florida Rule 3.851 post conviction motion (Dkt. 40). Respondents argue that the entire petition is time-barred under the AEDPA and that any unexhausted claims should be dismissed. Petitioner acknowledges that some of his claims are unexhausted and seeks an abeyance to enable him to exhaust those claims (Dkt. 24). Petitioner counters Respondents' timeliness argument by contending that seven of his claims are timely, and that any time-barred claims are resurrected by the timely filed claims pursuant to 28 U.S.C. § 2244(d)(1), as discussed in *Walker v. Crosby*, 341 F.3d 1240, 1245 (11th Cir. 2003).

Petitioner has not previously sought federal habeas relief. The Supreme Court has stressed that a capital habeas petitioner is entitled to a full consideration of all of his claims in his first

petition. *Lonchar v. Thomas*, 517 U.S. 314, 320 (1996) ("We believe that the same principle applies when a district court is faced with a request for a stay in a first federal habeas case: If the district court cannot dismiss the petition on the merits before the scheduled execution, it is obligated to address the merits and must issue a stay to prevent the case from becoming moot."); *Hauser v. Moore*, 223 F.3d 1316, 1321 (11th Cir. 2000) (citing *Lonchar*, 517 U.S. at 320) ("[A] district court could and should grant a stay in a first petition case unless the district court could dismiss the petition on the merits before the scheduled execution.").

After careful review, it is apparent that the instant petition cannot be dismissed on the merits before Petitioner's scheduled execution. Considering the number and nature of the claims in the petition, and the timeliness and procedural bar issues raised by Respondents, a meaningful review of the relevant state court record underlying these claims and contentions cannot be undertaken within the time constraints imposed by the death warrant. "[I]n order to conduct a meaningful review of the state court rulings, federal courts must have the opportunity of reviewing the trial transcripts and state court records underlying those rulings." *Ferguson v. Culliver*, 527 F.3d 1144, 1149 n.4 (11th Cir. 2008).

In short, review of Petitioner's claims in his first federal habeas petition should not occur under the exigencies of a death warrant. A proper consideration of those claims and Respondents' arguments should be thorough and meaningful. Absent a stay, that cannot occur.

### Standard for Stay

This Court has jurisdiction pursuant to § 2251(a)(1), notwithstanding that the petition includes some unexhausted claims and Petitioner's appeal remains pending in the Florida Supreme Court. *See Arthur v. Haley*, 248 F.3d 1302 (11th Cir. 2001). Section 2251(a)(1) of Title 28, United

States Code provides:

> Pending matters.-- A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

28 U.S.C. § 2251(a)(1).

In considering whether a stay should be granted under 28 U.S.C. § 2251, a four-part test is applied: (1) whether the movant has made a showing of likelihood of success on the merits and (2) of irreparable injury if the stay is not granted, (3) whether the stay would substantially harm other parties, and (4) whether granting the stay would serve the public interest. *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir. 1987);[1] *In re Holladay*, 331 F.3d 1169, 1176-77 (11th Cir. 2003).

Notwithstanding the interests of the State of Florida in carrying out Petitioner's sentence, there would be no irreparable harm to the State of Florida or substantial harm to any other party if a stay is entered. Petitioner was first convicted in 1981. The Florida Supreme Court vacated those convictions and granted a new trial, which ended in a mistrial in 1987. Venue was changed to Alachua County and a third trial in 1988 resulted in convictions and the instant sentence of death. For the most part, state court post conviction proceedings have been ongoing since that time, and continue, as noted, even today. The delay resulting from a limited stay will not result in irreparable harm and would serve the public's interest of assuring that the ultimate penalty in this case, if carried out, is in compliance with the Constitution.

---

[1] "In the district court a petitioner need only set out his grounds and allege facts. Rule 2. If the case does not proceed to answer, and if the grounds and facts alleged meet the criteria for a stay, petitioner is entitled to a stay. He cannot be denied a stay on the ground that he has not furnished additional information and materials that the Rules do not require of him. If an answer and state court record have been filed, then whether a request for a stay meets the familiar four-part test may depend upon everything that is before the court-petition, answer, record, and § 2254(d) presumptions (to the extent the requirements of that section have been met)." *Bundy v. Wainwright*, 808 F.2d at 1421.

Although the granting of this stay does not imply that Petitioner will succeed on the merits of any of his claims, at least two of his claims have arguable merit.[2] Said another way, "the petition demonstrates a likelihood of success in at least some respects sufficient to justify a stay." *Bundy v. Wainwright*, 808 F.2d at 1421. Moreover, at least one if not two of Petitioner's claims did not arguably ripen until his death warrant was signed by the Governor, and would therefore clearly be timely.[3] His due process/*Banks*/*Brady* claim is arguably timely as well.[4]

Respondents argue that Petitioner is not entitled to a stay of his execution because he has been dilatory in his attempt to seek federal habeas relief. Moreover, Respondents assert that any federal habeas petition filed by Petitioner will be time-barred under 28 U.S.C. § 2244(d)(1).

---

[2] Petitioner's claim in Ground Fourteen that he has been denied his statutory right to a clemency hearing with appointed counsel arguably raises a *minimal* due process challenge to the proceedings. *See Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J. concurring in part and concurring in judgment)("I believe that the Court of Appeals correctly concluded that some *minimal* procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State *arbitrarily denied a prisoner any access to its clemency process*.") (emphasis added).

Additionally, his due process claim alleging the State's failure to disclose the significance of prosecutor Hardy Pickard's handwritten notes of his interviews with James Smith, and the arguable conflict between what those notes indicate and Mr. Pickard's testimony during the 1997 evidentiary hearing, has arguable merit, considering Smith's alleged recantation of his trial testimony and the implications of these events on Petitioner's original claim under *United States v. Henry*, 447 U.S. 264 (1980). Petitioner's *Henry* claim is raised as Ground One in the instant habeas petition. (Dkt. 22, p. 25). Whether the state court's findings on this claim are entitled to deference under the AEDPA cannot be determined until the Florida Supreme Court addresses this claim. The claim may, as Respondents argue, be procedurally barred.

[3] The factual predicate for Petitioner's claim in Ground Fourteen that he was denied clemency proceedings prior to receiving a death warrant, and that the manner in which the Governor selected him for a death warrant was arbitrary and capricious in violation of *Furman v. Georgia*, 408 U.S. 238 (1972), could not have been discovered through due diligence until October 7, 2009, when the Governor issued the death warrant. His due process claim regarding the denial of his statutory right to a clemency hearing arguably did not ripen until the death warrant was signed. Likewise, Petitioner's Eighth Amendment claim based on the ABA report, and his due process challenge to the "standardless death warrant signing process" did not ripen until his death warrant was signed. Accordingly, at least one claim has been raised in his petition that is timely under § 2244(d)(1)(D).

[4] Petitioner's due process claim regarding Mr. Pickard's notes of his interviews of James Smith arguably did not ripen until 2006 when Petitioner's attorneys "inadvertently" discovered the significance of those notes.

Regardless of the ultimate merits of Respondents' contentions, a meaningful review of the merits cannot be accomplished before Petitioner's execution is carried out.

As noted, the federal constitutional claims raised in the instant federal habeas petition have never been presented to a federal court. Although the state court factual findings properly made are entitled to deference, it remains to be determined whether the state court findings and conclusions constituted a reasonable application of federal law, as under AEDPA, federal habeas relief may be granted only if the state court's "'adjudication of [a] claim on the merits . . . resulted in a decision that . . . involved an unreasonable application' of the relevant law." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Where a state court's adjudication of a claim is based on an unreasonable application of federal law, § 2254(d)(1) requires a federal court to resolve the claim without the deference AEDPA otherwise requires. *Id.* (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). Accordingly, this Court is required to consider each timely challenge made pursuant to federal constitutional law, applying the AEDPA standards of review, an impossible task to perform before Petitioner's scheduled execution.

As long ago as 1906, the United States Supreme Court recognized the appropriateness of a stay of execution to "to preserve the existing conditions and the subject of the petition," to enable the court "to take the time required for such consideration as it might need." *See United States v. Shipp*, 203 U.S. 563, 573 (1906). Where, as here, the petition cannot be said to be subject to summary dismissal on the merits, a stay must be entered. Otherwise, Petitioner's execution will render his constitutional claims moot. *See Dobbert v. Strickland*, 670 F.2d 938, 940 (11th Cir. 1982) ("Where the merits cannot be satisfactorily considered prior to execution of a scheduled death sentence, as in this instance, a stay should be granted."); *Lonchar v. Thomas*, 517 U.S. at 320-21.

Finally, a stay is appropriate to enable Petitioner's counsel to meaningfully research and present the constitutional claims raised in the petition. In *McFarland*, the United States Supreme Court held "that once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under § 2251 to enter a stay of execution." *Id.*, 512 U.S. at 858. The Supreme Court observed:

> Under ordinary circumstances, a capital defendant presumably will have sufficient time to request the appointment of counsel and file a formal habeas petition prior to his scheduled execution. But the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims. Where this opportunity is not afforded, "approving the execution of a defendant before his [petition] is decided on the merits would clearly be improper." (Citation omitted).

*Id.*

Under *McFarland*, Petitioner is entitled to meaningful representation. As the record demonstrates, expedited briefing of the claims and issues in this case was ordered. In his motion for an extension of time to file a response to Respondents' motion to dismiss, counsel for Petitioner avers that under the unique circumstances and time constraints in this case,[5] he cannot "provide [Petitioner with] the meaningful representation required by *McFarland*." (Dkt. 33 at p. 5). A review of Petitioner's petition and supporting memorandum of law supports counsel's contention as the pleadings are neither complete or adequate.

**Exhaustion of state court remedies and abeyance**

Issues of exhaustion of state court remedies further impact the propriety of a stay. Petitioner acknowledges that his petition includes at least three claims which are pending before the Florida Supreme Court, and are therefore unexhausted. Moreover, Petitioner alludes to a potential claim of

---

[5] Currently, counsel is simultaneously litigating claims on Petitioner's behalf in three separate courts (Dkt. 33 at p. 3).

incompetency to be executed, which he has not yet presented in state court. Petitioner accordingly seeks an abeyance of his "mixed petition" and a stay of execution, "pending resolution of his claims in state court." (Dkt. 24, ¶ 5).

An abeyance of a federal habeas petition should be granted only in limited circumstances, as the grant of a stay and abeyance "effectively excuses a petitioner's failure to present his claims first to the state court." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Accordingly, a stay and abeyance is appropriate only where a petitioner shows good cause for failing to exhaust his claims first in state court. *Id.*

When his death warrant issued, Petitioner was in the process of exhausting his claims in the Florida Supreme Court. Good cause for failure to exhaust, at least with respect to the three claims pending before that court, is therefore demonstrated by the record. Further, as discussed, it cannot be said, within the time constraints imposed by virtue of the death warrant, that those unexhausted claims have no potential merit. Lastly, the record does not demonstrate intentional, dilatory litigation tactics on Petitioner's part. In these circumstances, a stay and abeyance, rather than a dismissal of the mixed petition is appropriate. *Rhines v. Weber*, 544 U.S. at 278 ("[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.").

Respondents argue that the claims pending before the Florida Supreme Court are procedurally defaulted, as determined by the state post conviction court. *See Ogle v. Johnson*, 488 F.3d 1364, 1370 (11th Cir. 2007) (quoting *Rhines v. Weber*, 544 U.S. at 277-79 ("[W]hen it is

obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the district court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")). Notwithstanding Respondents' contentions, it is not obvious, on this record, that Petitioner's claims are procedurally barred in state court. The Florida Supreme Court will make that determination. Although a determination by the Florida Supreme Court that Petitioner's unexhausted claims are procedurally barred would certainly pose a potentially insurmountable obstacle to obtaining federal habeas review of those claims, that determination has not yet been made.

An indefinite stay and abeyance, however, would be inappropriate, considering the AEDPA's timeliness concerns and its "goal of finality." *Id*. Reasonable time limits should be imposed as a condition to any stay and abeyance. *Id*. Petitioner's Motion to Hold in Abeyance (Dkt. 24) will accordingly be granted.

**Timeliness of petition**

Finally, the issue of whether the petition is time-barred raises substantial issues, the resolution of which will eventually require review by the Eleventh Circuit and possibly the United States Supreme Court. In *Walker*, the Eleventh Circuit held that "[t]he statute of limitations in §2244(d)(1) applies to the application as a whole; individual claims within an application cannot be reviewed separately for timeliness. We reach this conclusion in light of the text and structure of AEDPA. Section 2244(d)(1) states the limitation period shall apply to 'an application for a writ of habeas corpus.'" *Walker v. Crosby*, 341 F.3d at 1245.

The analysis in *Walker v. Crosby*, supra, has been expressly rejected by at least one Circuit, ostensibly creating conflict between the Circuits. *Fielder v. Varner*, 379 F.3d 113, 117 (3d Cir. 2004)

("We do not agree with the interpretation advanced by Fielder and the *Walker* Court."), *cert. denied*, 543 U.S. 1067 (2005). Further, the Sixth Circuit has declined to follow *Walker*. *Bachman v. Bagley*, 487 F.3d 979, 984 (6th Cir. 2007). Notwithstanding, *Walker* remains good law in this Circuit. *See Ferreira v. Secretary, Dept. of Corrs.*, 494 F.3d 1286, 1289-90 (11th Cir. 2007); *Vedner v. Secretary, Dept. of Corrs.*, 268 Fed. Appx. 898, 900 (11th Cir. 2008).

Respondents contend that a footnote in a Supreme Court decision effectively overruled *Walker*. Preliminarily, this Court cannot agree. In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Court discussed the prohibition against a second or successive application in 28 U.S.C. § 2244(d)(2), drawing from the plain language of § 2244(d)(2) a distinction between the application and the claim[s] raised in the application. In a footnote, the Court, citing § 2244(d)(1) as analogous, drew the same distinction between an *application* and the claims raised in the application, for purposes of determining when the one limitation period under the AEDPA begins to run:

> Similarly, § 2244(d)(1) provides that a "1-year period of limitation shall apply to an application for a writ of habeas corpus." (Emphasis added.) The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).

544 U.S. at 416 n.6.

At least two of my colleagues consider this footnote binding, as having effectively overruled *Walker*. *Zack v. Crosby,* 607 F. Supp. 2d 1291, 1296 (N.D. Fla. 2008); *Murphy v. Secretary, Dept. of Corrs.*, Case. No. 8:06-CV-1633-T-27EAJ, 2007 WL 187705 at *4 (M.D. Fla. 2007) ("Although this circuit's precedent would ordinarily foreclose such a conclusion if not reached by a lower court, post-*Pace*, the *Walker* approach is no longer viable where a petitioner raises claims which attack different 'pertinent' judgments in a single petition such as Murphy's.").

This Court acknowledges the well-reasoned decisions of my colleagues and appreciates that the Circuit Court may, using the same rationale, revisit and overrule *Walker*, as it will have the opportunity to do by virtue of the COA granted in *Zack*. Notwithstanding, this Court preliminarily believes it to be constrained to follow and apply *Walker* as binding precedent. *United States v. Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008) ("[f]or the Supreme Court to overrule a case, its decision must have 'actually overruled or conflicted with [this court's prior precedent.]'"); *United States v. Marte*, 356 F.3d 1336, 1344 (11th Cir. 2004) ("Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision."). Finally, this Court declines to make a determination of whether the fundamental reasoning in *Walker* is or is not *dicta*. *Walker*'s holding remains good law in this Circuit, as evidenced by it being cited without qualification in subsequent cases in the Circuit.

Regardless, the existence of at least one timely claim in the instant petition trumps Respondents' argument that the entire petition is untimely, without regard to whether the untimely claims are resurrected by *Walker*. On this basis alone a stay should be granted, so that the merits of the timely claims can be properly addressed and the implications of *Walker* can be more thoroughly addressed.

Accordingly, it is **ORDERED**:

1. Petitioner's Application for Stay of Execution Pursuant to *McFarland v. Scott*, 512 U.S. 849 (1994) (Dkt. 1) is **GRANTED. Until further order of this Court, the execution of Petitioner Paul Beasley Johnson is stayed.**

2. Petitioner's Motion to Hold in Abeyance (Dkt. 24) is **GRANTED**. This federal

action is stayed and abated on condition that Petitioner pursue and exhaust all claims in state court within 30 days. Within 30 days thereafter, Petitioner shall file an amended habeas petition, fully setting forth all of his constitutional claims, with record citations and supporting legal authority. Respondent shall respond to the amended petition within 20 days, and Petitioner may file a reply to Respondent's response within 10 days thereafter. Absent good cause, no extensions will be considered.

3. The Clerk of this Court shall immediately give telephonic and written notice of this stay to Respondent Walter A. McNeil, Secretary, Florida Department of Corrections, Steven Singer, Warden, Florida State Prison, and the attorneys of record.

**DONE AND ORDERED** in Tampa, Florida, this 28th day of October, 2009.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
Respondent Walter A. McNeil
Warden Steven Singer